For a cause of action plaintiff alleged the following:
"That the Live Oak Properties, Inc., a corporation existing under the laws of the State of Louisiana and domiciled and doing business in this city and parish, is justly, truly and legally indebted unto your petitioner in the true, actual and lawful sum of $5,277.00, with legal interest on said amount from date of judgment until paid; for this to-wit:
"That on the 16th day of November, 1935, your petitioner entered into a lease contract with the said Live Oak Properties, Inc., represented by their manager and director, H.A. Greneaux, of this city and parish, whereby your petitioner did lease the southwest corner of the proposed arcade on the lot located at the corner of St. Dennis and Second Street in the City of Natchitoches, Louisiana, at the monthly rental of $25.00 per month, and which lease is recorded in Book of Mortgages 164, page 287, Recorder's Office, this parish, a copy of which lease is hereto attached and made a part of these proceedings.
"Your petitioner further shows that he owns and operates what is known as the `Little Shoe Store' on the premises above described and was engaged in the sale and repair of shoes and attachments, and for that purpose had his place equipped with modern machinery and devices that he valued at the sum of $4,000. That he also equipped the place so as to do a general shoe sales business, with a saleslady in charge; that he valued his stock of goods at $1,500.00; that before moving to the above location, your petitioner had built up a lucrative business in the repair and sale of shoes and attachments among the people in the City and parish of Natchitoches, as well as having customers from the neighboring parishes; and he estimates the business for the current year at $4,000. That he improved the place since moving there to the extent of painting and otherwise improving the exterior to the extent of $1,500, and electric attachments to the extent of $12.00; with attorney's fees for having to bring this suit in the sum of $500.00.
"Your petitioner further shows that due to the very freakish, bad condition and construction of the building now occupied by him; that it has a leaky roof, low and otherwise defective flooring that overflows from three to six inches every time there is a rain, with water washing in from the walls or side of the buildings and dampness; that his stock of goods has been depreciated and ruined at least 50%; that his machinery and equipment for making and repairing shoes has been damaged and ruined at least 50% and that as a result of the damage to his machinery equipment and stock of goods, his general sales business has been damaged; that his shoe repair business has been damaged, depreciated *Page 843 
and ruined at least 50%, due to loss of customers and general business; and that he is in no way able to carry on his work or business in said location, and that the management of said building has no consideration for others and that he has received cruel and inhuman treatment at the hands of the manager of said above described property.
"Your petitioner further shows that he has suffered injury, damage and loss, as above set forth, since the occupancy of the above described property, and has complained to the manager and owners a number of times; and has demanded and requested the necessary repairs in order to avoid this loss and damage, all of which was of no avail; but in the past 18 months the conditions have reached such a stage that he cannot in justice to himself, his customers and general trade, operate his business any longer; and that his injury, damage and loss were caused solely by the gross negligence, carelessness, want of skill, as well as the wanton disregard of your petitioner's rights in the premises, on the part of said defendant company, its managers, agents and employees, acting in the scope of their employment; and that your petitioner did in no way contribute to said occurrence. Further, that the defendant has injured and damaged his business by obstructing the sidewalks and streets around the above described property with supplies and materials for his building, and which is contrary to City ordinance on the subject and against the law.
"Petitioner further shows that he is entitled to the following damages as itemized:
"Damages to his machinery, attachments and equipment ...... $2000.00
Damages to his sale and repair business ....................... 2000.00
Damages to his stock of goods ....... 750.00
For painting and improving the property, and electric attachments .................... 15.00
For attorney's fees for having to bring this suit ................ 500.00 --------- $5277.00
"Making a total of $5277.00, with interest from date of judgment and cost of suit."
Defendant answered the petition denying categorically each and every allegation thereof. It then answered, assuming the position of plaintiff in reconvention, and alleged as follows:
"6. That the said Charlie Greco rented from plaintiff in reconvention the premises described in his petition at the sum of $25.00 per month. That the said Greco was delinquent in his rent at the time of filing the herein described suit. That he owes plaintiff in reconvention the sum of $50.00 for the monthly rental due by the said defendant in reconvention for the months of December, 1938, and January, 1939.
"7. That the suit filed by the original plaintiff, Charlie Greco, for damages alleged to have been suffered by him is totally without foundation and brought for the sole purpose of annoying and harassing the said defendant, Live Oaks Properties, Inc. That because of said action, the said original plaintiff has caused damage to plaintiff in reconvention for the following reasons, to-wit:
"8. Plaintiff in reconvention shows that it has been engaged in an expansion and building program on its lot located in the City of Natchitoches, part of which location was occupied by the original plaintiff. All of which was known by the said original plaintiff. That upon filing of the suit by said original plaintiff, plaintiff in reconvention had placed an application for a loan with the First Federal Savings and Loan Association, of Natchitoches, for the sum of $2500.00. That because of action on the part of the original plaintiff, the application made by the Live Oaks Properties, Inc., for the additional loan was rejected; as will be shown by copy of the resolution of the First Federal Savings and Loan Association, of Natchitoches, attached hereto and made a part hereof. Plaintiff in reconvention further shows that they had borrowed funds heretofore from the First Federal Savings and Loan Association and are now indebted to the said Association and were totally dependent upon this additional loan to complete their program of expansion and building; that because of their present indebtedness to the Association, plaintiff in reconvention could not ask any other lending agency to loan to them; that as a result of the original plaintiff's suit, plaintiff in reconvention has been unable to carry on this building and expansion program and, having to stop in the middle of same, has caused them to suffer considerable damages, as shown herein.
"9. Deterioration of cement that had been placed upon the premises for additional construction, the sum of $72.00. *Page 844 
That plaintiff in reconvention had rented equipment necessary in the continuation of their building and expansion program and as a result of being unable to continue the use thereof, was forced to pay rental on said equipment without being able to use same, which rental amounted to the sum of $100.00.
"10. That as a result of the suit brought by the original plaintiff, plaintiff in reconvention was forced to obtain the services of an attorney at law to represent them in said cause, and that they are entitled to damages in the amount of $300.00, as attorney's fees they are obliged to pay in this action.
"Wherefore, defendant prays that the plaintiff's demands be rejected at his cost; and that there be judgment in favor of defendant, Live Oak Properties, Inc., and against the said plaintiff, Charlie Greco, condemning him to pay unto the defendant the sum of $522.00, with legal interest thereon from date of judicial demand until paid, together with all costs of this reconventional demand."
On these issues the case was tried below and the lower court awarded judgment for plaintiff in the sum of $525, with legal interest thereon from date of judgment. Defendant is prosecuting this appeal from that judgment. Plaintiff has not answered the appeal, although in his brief he asks that the judgment be increased to the amount of $1,250.
This being a suit for property damage in an amount in excess of $2,000, ordinarily we would not have jurisdiction, but it is so apparent that the amount of damages prayed for is greatly exaggerated and inflated and that the true amount involved is well within our jurisdiction, we feel secure in taking jurisdiction and determining the case.
When testifying as to the amount he had been damaged, plaintiff fixed it at around $900.
In the lower court defendant filed an exception of no cause of action, which was tried and overruled. It is again urging it here. There is no merit in the exception and it was properly overruled.
Plaintiff's cause of action is based upon the allegations that there was a crack or open space in the east wall of the building he was occupying, which was made for the purpose of joining another building which defendant was erecting to this east wall; that heavy rain water entered this opening and ran across the ceiling and dripped onto the goods and machinery in his place of business; and that defendant had placed sand and other building materials near to his store building on the side entrance, which obstructed the natural flow of the rain water and caused it to come into the store under the side door.
The record discloses to our satisfaction that the opening in the east wall had been closed with concrete at least one day before the rain water of which plaintiff complains entered, and that for any rain to have come in, as claimed by plaintiff, it would have had to penetrate nine inches of concrete, which is improbable. That the roof did not leak is proven by those occupying the rooms just above plaintiff's store. Further proof that no rain water entered the store from above is that no repairs of any kind have been made on the building since the rain complained of and ever since plaintiff moved out, defendant has used the building as a store room for cement and other materials which must be kept dry and at no time, although there were many rains as hard and torrential as the rainfall complained of by plaintiff, has any rain water entered the building from above.
We are thoroughly convinced from all the testimony that the water which entered plaintiff's store on the occasion complained of came under the doors, both the side and front doors, as it had done on several former occasions, and that plaintiff's damage on this occasion would not have been any more than it was on former ones, had he not lost his head and acted as he did. No doubt, plaintiff was irritated and disgusted when he went to his place of business the morning after the rain the night before, and found water standing on the floor several inches deep in places and covering a good portion of the floor space; and we can fully understand the feeling he had. But that does not justify plaintiff's actions thereafter. He immediately closed and locked the place of business and took the key to the Clerk of Court's office and left it with instructions to give it to no one. On two occasions that same day he was requested, first, by an officer and, second, by an employee of defendant, to open the store and let them help him clean the water out and correct any damage and that if defendant was responsible for the damage, it would rectify it. He paid no attention *Page 845 
to these requests and it was seven days later before defendant could get into the store and then only after securing a Court order. Plaintiff filed this suit either the day he closed the store or the next.
Plaintiff made no effort to minimize the damage he had suffered but did everything to aggravate it. We think it certain that if he had swept the water out of the store and wiped dry the machines, shoes and other articles he claims were damaged, his total damage, if any, would have been small. There was no excuse for his not doing this, especially when defendant was asking for the privilege of assisting him. We are forced to conclude that plaintiff was purposely aggravating the damage and this conclusion is supported by the fact that the suit for an amount of damages which we are certain far exceeds the value of everything in his small place of business was caused by mildew which was the result of the store having been locked and the water left in the building, together with the atmospheric changes from cold to hot and vice versa. If there was any damage to the machines, which we think the record fails to show, it was caused in the same manner. If we should find that the rain water caused any damage, it would be impossible to estimate it or separate it from that caused by plaintiff's failure to minimize it.
We are also convinced that the alleged obstructions placed by defendant on the side of the building did not have any causal connection with the water from the street entering plaintiff's store. We are convinced from the testimony in the record that the City of Natchitoches, by failure to keep open the drains and storm sewers, was responsible for this overflow. The City had allowed them to become clogged with debris and other substances and therefore the water could not pass. Not only the store of plaintiff but many other places of business and ground floor offices were flooded in this section of the City on this particular occasion.
That plaintiff was inconvenienced and annoyed by the water entering his store on the occasion complained of and on several former occasions cannot be denied. It was through no fault of plaintiff that the water flooded his store and we are of the opinion it was not from any fault or negligence of defendant that it occurred.
We are fully convinced that plaintiff is not entitled to recover any damages from defendant in this case. We are also convinced that defendant in reconvention is not entitled to recover. Plaintiff was entitled under his lease contract to have the occupancy of a building that he could use without the annoyance of being flooded at intervals and whenever a heavy rain fell. In this court defendant in reconvention is not claiming anything except two months' rent.
A proper judgment in this case is one rejecting both the demands of plaintiff and defendant in reconvention and dividing the costs equally between them, and it is so ordered.
The judgment of the lower court is therefore reversed.