DOMENGEAUX, Judge.
This is a suit for rent under a lease agreement executed on May 27, 1966 between Paul Jantz and Charles Derouen, as lessors, and the five defendants-appellants, Dr. James Fournet, Dr. Charles D. Bessire, Dr. Melvin L. Price, William W. Gilmore, Jr. and J. W. Dupree, as lessees. Subsequent to the execution of the lease contract, the interests of Jantz and Derouen were transferred to the plaintiff corporation.
When the lease was entered into the defendants were in the process of developing a chain of franchised restaurants known as “Dale Robertson New Frontier Stage Stops”. Certain plans and specifications drawn by the engineers employed by defendants for construction of a restaurant building were presented to plaintiff and plaintiff constructed said restaurant build-on its property in Oakdale, Allen Parish, Louisiana from these plans and specifications.
The lease in question provided for a term of ten years, commencing with the completion of the building, and it stipulated a monthly rental of $300.00 payable in advance on the first day of each month during the term of the lease and further contained an acceleration clause and the usual provisions of interest for default of payments, attorney fees, et cetera. Monthly payments were to commence when the building was completed.
*829 The building was finished in December, 1966 and the defendants-lessees went into possession on January 1, 1967 and operated a restaurant on the premises until January, 1969. Rental payments were made at first regularly, and later sporadically through November, 1968. Defendants issued a rental check for December, 1968 but the check was not honored because of insufficient funds. No further payment of rent has been received from defendants. In January, 1969, without notice to lessors, the lessees closed the restaurant and left the premises.
By virtue of the non-payment of rent and under the provisions of the acceleration clause in the lease, plaintiff corporation filed suit against defendants seeking judgment for all past due rent and the accelerated amount through the term of the lease amounting to $29,100.00, plus interest, attorney fees, and costs. In their answer to the suit the defendants affirmatively alleged that the lease had been breached and forfeited by the lessors because the building had not been constructed in accordance with the agreed plans and specifications, and prayed for cancellation of the lease. By reconvention, they sought damages for loss of business and other items.
The trial court rendered judgment in favor of plaintiff and against the defendants in the amount of $28,260.00 [1] in addition to interest, attorney fees, and costs and defendants’ reconventional demand was rejected. Defendants have appealed devolutively to this court.
The issue on appeal is whether the trial judge committed manifest error in holding that the building was suited for the purpose for which it was leased.
The evidence shows that the defendants requested certain changes and modifications from the original plans and specifications, among them being the substitution of asphalt shingles for wood shingles on the roof, wood framing instead of aluminum framing, the latter change being effected primarily to give the restaurant a more rustic appearance. The original plans called for not more than seven tons of air conditioning, but during construction, it was decided that 12 tons would be needed. Also, it was necessary to increase the size of a blower fan from 16 inches to 23 inches.
Defendants rely primarily on the testimony of Lee T. Fournet, a brother of one of the defendants, who had prepared the original plans but who had taken no part in the construction of the building, and in fact, had never seen the building until after the present suit was filed. Mr. Fournet’s comments generally were that the building was not constructed according to plans and specifications and was wrought with imperfections, and among other things, was unsafe because it did not meet certain requirements of the State Fire Marshal. Various witnesses who testified on behalf of plaintiff contradicted the conclusions of Mr. Fournet. It was shown, for instance, that a fire which had occurred during the time that defendants were operating the building as a restaurant was caused by lightning and not by faulty wiring, and an alleged malfunctioning in the air conditioning system was due to improper maintenance of the unit, specifically not cleaning the filters which had become clogged with grease and dust.
The evidence as a whole indicates that the defendants operated their restaurant in plaintiff’s building for some two years, and *830 that except for the usual and normal problems attendant to such an operation, no serious complaint was made by defendants as to the construction of the building or its inadequacy to conduct a restaurant operation.
The trial judge, in summing up the facts, stated:
“In considering the testimony of all the witnesses, it is the opinion of the Court that any substantial changes in the plans and specifications were made at the suggestion and with the full consent of one or all of the defendants. It is the opinion of the Court, considering the testimony of all the witnesses, that the building constructed by plaintiff for rental by defendants was built substantially in accordance with the plans and specifications furnished by defendants, and subject only to changes requested by defendants, with the exception that plaintiff’s contractor failed to sheetrock the furnace room as called for in the plans and specifications.
“It is the Court’s opinion, based upon the testimony of witnesses and the Court’s personal experience in frequenting this restaurant while it was in operation that the building was quite suitable for the use for which it was intended. It was pleasant and comfortable, and the business failed for reasons unknown to this Court, but not related to the manner in which the building was constructed or equipped * * * ”
The only unauthorized variance from the plans and specifications was the failure of plaintiffs to place sheetrock on the walls of the furnace room, and this factor alone is not sufficient cause to cancel the lease. This omission could not and did not prevent the defendants from operating the business. Actually the trial judge ordered the plaintiff in the judgment to cause the sheetrock to be installed and ordered defendants to allow plaintiffs to enter upon the premises for that purpose.
It is only in extreme cases that a lessee is entitled to have a lease cancelled because of the condition of the leased premises. Lirette v. Sharp, La.App., 44 So.2d 221; Guillot v. Morgan, La.App., 165 So.2d 330. Additionally, leases ordinarily will not be cancelled on technical grounds. As an example, see Hancock v. Sliman, La.App., 175 So.2d 437, where the defendant alleged that a house which he leased was not habitable due to lack of proper plumbing installations and sewage disposal system. The defendant also contended that the lease was null and void because the lessor had failed to obtain a permit for installation of a septic tank in compliance with certain regulations of the State and Parish Sanitary Codes and Ordinances and also had failed to obtain a certificate of occupancy required by another parish ordinance. In affirming a decision for the lessor, the Court of Appeal said:
“The second prong of the defense is merely an integral part of the main issue, i. e., did this admitted technical violation of a parish ordinance, when considered with all the other evidence, render the premises uninhabitable? We have no hesitancy in holding the mere showing that no applications or plans for a sewage system had been submitted, without further proof that the premises were in fact unsanitary and uninhabitable, did not render the contract void ab initio.”
The issues herein are purely factual. There is ample evidence to support the trial court’s findings and conclusions. Finding no manifest error, we affirm the judgment of the trial court. All costs to be assessed against defendants-appellants.
Affirmed.

. The trial judge granted defendants a credit of $840.00 representing $60.00 per month that they paid additionally as rent for the first 14 months of the lease. The additional $60.00, although agreed to verbally by the parties, but not reduced to writing, was to represent repayment for capital expenditures made by lessors due to change orders requested by defendants to increase the size of the air conditioning unit and for additional other items. Plaintiff sued only for the rental stipulated in the written lease contract.