273 So.2d 360 (1973)
Leon BIALY, Plaintiff-Appellant,
v.
Harold KATZ, Defendant-Appellee.
No. 4070.
Court of Appeal of Louisiana, Third Circuit.
January 29, 1973.
Rehearing Denied March 7, 1973.
Writ Refused April 19, 1973.
David A. Sheffield, Alexandria, for plaintiff-appellant.
Gus Voltz, Jr., Alexandria, for defendant-appellee.
Before FRUGE, HOOD, and DOMENGEAUX, JJ.
*361 FRUGE, Judge.
Plaintiff-appellant-lessee, Leon Bialy, seeks to cancel a lease with defendant-appellee-lessor, Harold Katz, on a commercial building in Alexandria, Louisiana. Assigning written reasons for judgment, the trial court rejected plaintiff's demands at his cost. From this judgment, the plaintiff has appealed. We affirm.

THE FACTS
The building was originally owned by the three O'Neal heirs who had leased the property to Mr. Leon Bialy in 1959. The lease was renewed in 1963 for a period of twelve years ending in 1975, for $150.00 per month. Plaintiff occupied the building under the lease agreement from 1959 until February, 1972.
Mr. Fred Moore, husband of one of the three original owners, managed the property for the owners. He testified that about three years prior to defendant's purchase of the premises, he had considered a new roof for the building; that during the last few years, Mr. Bialy had complained about some small roof leaks; and that he had authorized and paid Mr. Wesley Moore to put a new roof on the building in 1968. However, the record leaves doubt as to whether or not a new roof was actually installed by Mr. Wesley Moore. Suffice it to say, Mr. Fred Moore was under the impression that a new roof had been put on the building.
The owners of the building considered selling the property and under a prior agreement with plaintiff, he was offered the first option to purchase the property. However, plaintiff related to Mr. Fred Moore that "he had decided not to buy it". Subsequently thereto, an agreement was entered into between defendant and the owners, whereby the defendant agreed to purchase the premises. A confused situation developed when plaintiff later changed his mind, called Mr. Fred Moore, and asked if he could now purchase the building. Mr. Fred Moore testified that he explained to plaintiff that the owners had entered into a contract to sell the property, therefore, it was no longer available for sale. On May 29, 1971, the property was sold to defendant who continued the lease then in effect with plaintiff.
Approximately one month after the sale transaction was consummated, defendant received a formal letter from plaintiff stating that the roof was leaking. On July 1, 1971, defendant was informed of broken glass in the building and electrical wiring problems. After receiving this information, defendant contacted Mr. Fred Moore in order to determine who had heretofore done the roof work on the building. Defendant learned from his vendor that the roofer was Mr. Wesley Moore. Defendant then contacted the roofer and requested that he inspect the roof and make all necessary repairs.
Mr. Wesley Moore testified that he repaired the roof during the month of July, 1971, but on July 30, 1971, defendant received a letter from plaintiff which stated that "the roof repair did not help at all and the roof is still leaking very badly".
Plaintiff's testimony reveals that at approximately the same time his demand letter of July 30th was being delivered to defendant, plaintiff was negotiating for another lease; that he filed his "Petition for Cancellation of Lease" on August 10, 1971; and that he entered into a second lease on August 15, 1971.
Defendant, in an attempt to alleviate the problems complained of, contacted several roofing contractors. The record shows that he experienced difficulty in securing an immediate contract for repair of the roof, but he eventually installed a new roof at a cost of $3,732.00.
From June to September of 1971, the roof leak grew progressively worse. The problem was complicated when water reached the electric meter box, electric junction box, and electric conduit lines. *362 Two city electricians were summoned to the building, and they in turn summoned the chief electrical inspector for the City of Alexandria, Mr. Lonnie Duncan.
Mr. Duncan testified that "water was getting into the lighting service equipment, that is the single phase service supplying the lighting." Mr. Duncan did not ascertain where the water was coming from. On September 16, 1971, a heavy rain again created electrical problems and Mr. Duncan notified defendant that electrical service would have to be terminated in order to allow installation of temporary wiring. Mr. Duncan explained that it is not out of the ordinary to put in temporary wiring where a new roof is being put on a commercial building such as the one in question.
Defendant contacted an electrical contractor the same day that he was informed by Mr. Duncan that temporary electrical work was required. The contractor installed temporary wiring in the building. Defendant also told the contractor to "go back and put the electrical work in good condition oryou know like it was before, or if it needed any other repairs, to do it".
Work on repairing the roof commenced October, 1971. Subsequent to the completion of these extensive repairs, plaintiff encountered no other problems with the roof and occupied the building until February, 1972, at which time he physically moved the major inventory and fixtures to the premises of the second lease entered into in August, 1971.

THE LAW
The question before the court is whether the plaintiff was justified in cancelling the lease due to the alleged unsuitable condition of the property. In view of LSA-C.C. Articles 2692, 2693, 2695, 2696, and 2698-2700, the lessor must maintain property in such condition as to serve the purpose for which it is leased. If he fails to do so, the lessee may ask for termination of the lease, or may himself cause the repairs to be made and deduct the cost thereof from the rent due on proving that the repairs were indispensable and that the price which he has paid was just and reasonable. Greco v. Live Oak Properties, 1 So.2d 841 (La.App.2nd Cir., 1941). However, it is the settled jurisprudence of this state that the dissolution of a lease for such causes is not favorable under our law and is granted only in extreme cases. Lirette v. Sharp, et al., 44 So.2d 221 (La. App. 1st Cir., 1950); Guillot v. Morgan, 165 So.2d 330 (La.App.2nd Cir., 1964), and Discount City of Oakdale, Inc. v. Fournet, 251 So.2d 828 (La.App.3rd Cir., 1971).
In a well-written opinion, the trial court judge found for defendant; a particularly germane exerpt from that opinion follows:
"Most of the difficulty of which Bialy complains initiated well before Katz bought this property. The roof leaks did not originate during the period of time that Katz owned the property. These leaks had their inception years before Katz bought the property. The final stages of this decay or failure evidenced itself during Katz owner-ship and the question then simply becomes whether or not Katz made a bonafide effort to comply with the terms and conditions of the lease and the provisions of Article 2692 of the Civil Code with particular reference to Subsection 2 thereof which says `to maintain the thing in a condition such as to serve for the use for which it is hired.'
"It is the finding of this Court that Katz did make a reasonable effort to correct the deficiencies which unknown to him began a rather long period of time before he acquired the property. The fact that he was unable to completely and immediately have the roof re-built which it required cannot serve as a basis for ordering cancellation of the lease. *363 In regard to the windows and decorative glass in front of the building, this Court can only remark that this is a situation which was either in existence at the time that the lessee leased the property or which occurred during his occupancy and of which he did not complain until after Katz bought the property and in the approximate time period that Bialy decided to lease other properties.
"The cases cited by plaintiff do not fit the facts of the instant case. The general rule in regard to this type situation is enunciated in Guillot v. Morgan, 165 So. 2d 330 which in essence states that the dissolution of a lease on grounds of deteriorating condition of the property is not favored and is granted only in extreme cases. This is not an extreme case and the relief plaintiff prays for is denied at his costs."

THE HOLDING
Plaintiff contended: the lease should be cancelled "upon Katz's failure, neglect and refusal to maintain said premises, particularly the roof and glass of the building in good repair as required under the terms of the lease and the codal provisions of our law." The trial court judge disagreed with this contention.
No doubt the plaintiff was irritated when he went to his place of business after the rains in question and found water in the building, but that in itself does not justify cancellation of the lease.
The issues herein are purely factual. There is ample evidence to support the trial court's findings and conclusions. Finding no manifest error, we affirm the judgment of the trial court. All costs to be assessed against plaintiff-appellant.
Affirmed.
HOOD, J., dissents being of the opinion that plaintiff is entitled to the relief sought on the ground that the defendant lessor failed to maintain the leased premises as required by LSA-C.C. Arts. 2692, 2693 and 2695.