303 So.2d 810 (1974)
D. A. BILLEAUDEAUX, Plaintiff and Appellee,
v.
Bobby SOILEAU and Kern Pitre, Defendants and Appellants.
No. 4757.
Court of Appeal of Louisiana, Third Circuit.
November 27, 1974.
Donald Soileau, Mamou, for defendants-appellants.
Domengeaux & Wright by Jack C. Fruge, Jr., Lafayette, for plaintiff-appellee.
Before HOOD, CULPEPPER and WATSON, JJ.
CULPEPPER, Judge.
Plaintiff-lessor filed this suit against defendants-lessees to recover rent due under the terms of a written lease of a lounge and dance hall. Defendants contend they were justified in terminating rental payments and vacating the premises because of defects which rendered the building unfit for the purposes of the lease. They also reconvened for damages. The trial court awarded plaintiff $1,375 for rent due, less a credit of $50 for certain repairs made by defendants. He rejected defendants' reconventional demand. Defendants appealed.
The issues concern defendants' contentions that: (1) The sewerage system clogged up. (2) The roof leaked. (3) The hot water heater would not work.
The lease was for a term of 11 months, commencing February 1, 1973 and ending December 31, 1973. Rentals were payable in installments as follows: February 1, $825; August 1, $825; November 1, $550. The lessees took possession of the premises in January, 1973. They paid the first two installments totaling $1650, but failed to pay the installments due on August 1 or November 1. Defendants vacated the premises some time between June and August.
Defendants argue that they were justified in vacating the premises and canceling the lease due to plaintiff's failure to provide premises which were suitable for the purpose of operating a lounge and dance hall.
*811 THE SEWER SYSTEM
The defendants testified that the sewer system gave them constant problems from the time they occupied the building. Kern Pitre testified that the sewer system worked properly a while, but then sewerage began to clog the toilet in the men's restroom. Adrien Wyble, Jr., defendants' former employee, testified that a puddle of sewerage constantly remained outside the south side of the building.
Defendants contend that they requested plaintiff to repair the sewer system, but he refused. Plaintiff denies this request was ever made. No written request to repair the sewer system or any other defect was ever sent to the plaintiff.
The City of Opelousas supplied water to the lounge but did not provide sewerage services. Sewerage flowed from the building through pipes to a septic tank.
Frank McCardell, chief sanitarian for the St. Landry Parish Health Unit, testified that the City Water Department inspected the sewer system in January, 1973. Apparently, the sewer system worked properly, because the city filed no complaint. He also stated that the leased property did not have any sewerage problems in 1972. Three months after the lessees occupied the building, the city complained that its employees could not read the water meter because it was filled with sewerage.
As a result of this complaint, McCardell and Terry Teekell, city water superintendent, inspected the premises on May 25. They found the meter full of sewerage and assumed it was caused by a broken sewer pipe. After the lines were excavated, it was learned that a pipe had actually broken.
The lessees were ordered to correct this condition or have their lounge closed. The follow-up inspection on May 30 showed that the situation had not been corrected. Again, the lessees were ordered to remedy this violation. A final inspection on June 7 by Teekell showed that the sewer pipes had been repaired and the septic tank pumped out.
Defendants stated that they had been closed by the Health Department. Mr. McCardell said he never closed their establishment. The lounge was closed one time for nine days while the sewer system was repaired. The city had turned the water off until the repairs were completed.
The lessees also stated that they would be required to move the sewerage line fifty feet from the water meter. Although he testified that the reason for sewerage in the meter was the close proximity of the sewer pipe to the meter, McCardell stated the present sewer system was not in violation of the Department's regulations for rural plumbing. There is no evidence showing that the lessees would be forced to move the sewer line.
James Vidrine, plaintiff's present tenant, leased the premises in January, 1974. Shortly thereafter, he had the septic tank cleaned, costing him $35. Since then he has made no other repairs to the sewer system.
THE ROOF LEAK
Defendants insisted that the roof leaked constantly from the time they occupied the premises. They claim it leaked everywhere in the building causing standing water, especially on the dance floor. They say it leaked so bad on one occasion that the band was forced to quit playing. They also contend that one girl fell on the slippery floor. Adrien Wyble, Jr. testified that the roof leaked in several places, especially over the dance floor and bar. On two or three occasions, he says enough water accumulated to require that the water be swept out or mopped up.
According to defendants, they requested plaintiff to repair the roof on several occasions. They admit that plaintiff's repairman tried to fix the leaky roof. However, they say he only spread a small amount of tar in one spot on the roof. According to *812 them, the roof continued to leak in spite of this attempted repair. Thereafter, they contend the plaintiff refused to repair the roof on request.
Plaintiff testified that he was only contacted once by either of the defendants to repair the roof. After discussing the problem, plaintiff suggested that the defendant himself could contact his repairman. His present tenant testified that he asked plaintiff to repair a roof leak once after a heavy wind and rain storm. He says plaintiff immediately sent the same repairman who fixed the roof for defendants. This was the only time he had problems with the roof. Plaintiff's cost for these roof repairs was only $80.
THE HOT WATER HEATER
Finally, defendants claim that the hot water heater never worked. While it is true that plaintiff replaced the hot water heater before he rented to Vidrine, the only testimony as to why the hot water heater did not work is that of the defendants themselves. They claim that the plumber called by them refused to connect the heater because it was not properly ventilated. However, the plumber was not called by defendants to confirm their contention. Wyble testified that he knew nothing about the alleged problem with the hot water heater.
This court stated the law applicable to this factual situation in Bialy v. Katz, 273 So.2d 360, 362 (La.App. 3rd Cir. 1973):
"In view of LSA-C.C. Articles 2692, 2693, 2695, 2696, and 2698-2700, the lessor must maintain property in such condition as to serve the purpose for which it is leased. If he fails to do so, the lessee may ask for termination of the lease, or may himself cause the repairs to be made and deduct the cost thereof from the rent due on proving that the repairs were indispensable and that the price which he has paid was just and reasonable. Greco v. Live Oak Properties, 1 So.2d 841 (La.App. 2nd Cir. 1941). However, it is the settled jurisprudence of this state that the dissolution of a lease for such causes is not favorable under our law and is granted only in extreme cases. Lirette v. Sharp, et al., 44 So.2d 221 (La.App. 1st Cir., 1950); Guillot v. Morgan, 165 So.2d 330 (La. App. 2nd Cir., 1964), and Discount City of Oakdale, Inc. v. Fournet, 251 So.2d 828 (La.App. 3rd Cir., 1971)."
After observing the witnesses testify, the trial judge concluded in his written reasons that the building remained suitable for the purpose leased. Apparently, he did not accord much weight to the testimony of the defendants or their employee as to the nature of the defects and the extent of the repairs necessary. Nor did he accept the contention that the plaintiff refused to make necessary repairs upon request by defendants. It seems that he based his factual conclusions primarily on the testimony of two disinterested witnesses, Mr. Vidrine and Mr. McCardell.
The issues are purely factual. There is ample evidence to support the trial court's findings and conclusions.
Finding no manifest error, we affirm the judgment of the trial court. All costs of this appeal are assessed against defendants-appellants.
Affirmed.