196 So.2d 607 (1967)
Joseph C. MEYERS, Jr.
v.
Lloyd E. DREWES, Jr.
No. 2469.
Court of Appeal of Louisiana, Fourth Circuit.
March 6, 1967.
Rehearing Denied April 3, 1967.
*608 John B. Wilkinson, New Orleans, for Joseph C. Meyers, Jr., plaintiff-appellant and defendant in reconvention.
William P. Rutledge, New Orleans, for Lloyd E. Drewes, defendant-appellant and plaintiff in reconvention.
Before YARRUT, CHASEZ and HALL, JJ.
HALL, Judge.
Plaintiff, lessor of the premises known as Apartment "B", 5607 Prytania Street in the City of New Orleans, filed this suit against his lessee for $440.00 representing rental for the unexpired term of a written lease plus 20% thereof as attorney's fees together with interest and costs.
Defendant answered alleging that he and his family had been constructively evicted from the apartment by reason of the fact that the apartment was unfit for human habitation and therefore plaintiff was not entitled to recover any rental. Defendant also filed a reconventional demand for $1,302.30 for damages allegedly occasioned to certain articles of clothing and furniture by the condition of the apartment and for damages for worry, concern, embarrassment and physical discomfort suffered by him.
Following trial on the merits the Trial Judge rendered judgment in plaintiff's favor for the amount of rental and attorney's fees prayed for plus interest and costs; and rendered further judgment in defendant's favor in the sum of $580.00 on his reconventional demand. Both parties appealed.
The record reveals that the defendant first entered the apartment under a written lease from plaintiff, the term of which commenced on August 1, 1964 and expired on September 30, 1965.
On September 29, 1965 the parties entered into a second lease of the apartment for the term commencing October 1, 1965 and ending September 30, 1966. The two leases are on the standard form of the Real Estate Board of New Orleans and are similar in all of their terms and conditions. Plaintiff occupied the apartment and paid the rental due throughout the term of the first lease without complaint of any kind. The second lease was entered into just twenty days after Hurricane "Betsy", which occurred on September 9, 1965. The only complaint which defendant made of any damage occasioned by the storm was in response to a post card which plaintiff sent his tenants *609 sometime in October making inquiries as to storm damage. Defendant's only complaint was that one pane of glass had been broken by the force of the wind.
Defendant made no complaint whatever either to plaintiff or his agent until sometime in January 1966 when he telephoned plaintiff's agent complaining of the condition of the apartment and requested that he be released from the lease. According to defendant this telephone conversation took place on January 17th. Testimony on behalf of plaintiff places the date as January 20th. At any rate defendant addressed a letter to plaintiff's agent on January 20, 1966 stating "As per your request today, I am hereby sending you a report of the conditions of our apartment." Then follows a list in which defendant refers to excessive moisture causing mildew, mold and sweating of the walls bringing on cold after cold to his child and also causing damage to his clothes and furniture. He also refers to the broken pane of glass which had not been repaired since the storm, to leaking plumbing in the bathroom and inadequate wall heaters which he states "are outdated and poor burning, heating only the ceiling and upper parts of rooms, while floors and people remain uncomfortable." Because of these conditions defendant requested that he be released from the lease. Plaintiff's agent answered this letter on January 21, 1966 stating that plaintiff would not agree to a cancellation of the lease but that he would permit defendant to sub-lease the apartment (subleasing having been prohibited by the terms of the lease) and offered to assist him in finding a tenant.
Defendant moved out of the apartment on January 31, 1966 without communicating further with lessor or his agent. The first knowledge that they received of defendant's action was upon receipt of a letter from defendant's attorney dated February 2, 1966. On February 10th when the rent for February became due plaintiff made demand upon defendant for payment. The rental not being paid plaintiff filed this suit on March 29, 1966 praying for rental due for the balance of the term of the lease amounting to $440.00 plus 20% attorney's fees carried by the lease.
Plaintiff made prima facie proof of his case. The questions presented are (1) whether defendant was constructively evicted from the apartment and therefore justified in refusing to pay the rent, and, (2) whether defendant is entitled to damages on his reconventional demand.
Defendant contends that he was constructively evicted by reason of the fact that the apartment became unfit to live in. The only testimony in the record pertaining to the apartment's condition is that given by plaintiff and his wife.
Their main complaint was with reference to the gas wall heaters which they testified were old and antiquated, with dirty burners rendering it impossible to get them to burn properly with a clear blue flame. As a consequence condensation formed in the apartment causing mildew to form on walls, furniture and on their clothing. They testified that the walls sweated to such an extent that water actually dripped onto the floors and formed in sheets and puddles. They testified they could not walk about the apartment either bare-footed or in socks, and were unable to allow the baby to crawl about the floor; that water actually dripped from the baby's mattress and that the infant developed a severe cold and was unable to get rid of it. They also complained of one occasion in November 1965 during a week of rain that water leaked into the apartment at the base board and attributed this to the fact that the roof had been damaged during the hurricane. The record however reveals that the apartment which defendant occupied was a lower apartment and was one of twelve under the same roof; that although the roof sustained some damage during the hurricane, the damage was to a part of the proof on the other side of the building, and was repaired as soon as plaintiff was able to procure a roofer. The record also reveals that none of the other apartments in the building, upper or lower, had *610 any damage. We are of the opinion that none of the complaints of defendant can be attributed to the roof or to any structural defect in the building or in defendant's apartment. They also complained of leaky plumbing in the bathroom, but apparently the water complained of did not come from this source. Neither did it come from the broken window. We are convinced that the condition of the apartment as described by defendant and his wife was due to condensation caused by constant burning of the gas heaters.
Defendant admitted that he had made no complaint during his occupancy of the apartment under the first lease. He testified that when he rented the apartment the first time he and his wife had just been married; that both of them worked and spent very little time in the apartment even in the evenings or on week ends and that the heaters were not used to any great extent; that some mildew appeared on the walls during the winter of the first year but no complaints were made because they were able to control it by washing down the walls. A baby was born to the couple during the summer of their first year of occupancy of the apartment. This kept the couple at home and during the winter of the second year they burned the gas constantly. The first time they had any trouble during the lease for the second year appeared during the month of November 1965 when they noticed mildew forming on the walls. No complaint was made of this because they thought it could be controlled. However they found that they could not control it and by December they testified that the condition of the apartment became such that it was not fit to live in. Nevertheless they admitted they made no complaint whatever to plaintiff or his agent until the telephone conversation of January 17th followed by their letter of January 20th in which they asked to be released from the lease. They also admitted that they did not communicate thereafter with plaintiff or his agent and that they moved from the apartment on January 30th without giving any notice of their intention to move.
 The lease contains the following provisions:
 "Condition The within leased premises and appurtenances,
 and including the locks, keys, plumbing,
 Maintenance and heating system, and all other fixtures, are
 accepted by the Lessee in their present condition,
 except for such repairs and improvements
 as are written into this lease. The Lessee
 agrees to keep them in the same order as
 received, during the term of this lease, and no
 repairs shall be due Lessee except such as may
 be especially noted herein or needed to the
 roof or rendered necessary by fire or other
 casualty; to pay all bills for water, light, gas
 and other service, and to comply at the Lessee's
 expense with all ordinances and laws,
 now existing or to be enacted, and at the
 termination or cancellation of this lease to return
 said premises broom clean and free from
 trash, and in like good order as received by
 actual delivery of the keys to Lessor or Agent,
 the usual decay, wear and tear excepted.
 Lessee assumes the maintenance of the
 plumbing, including fixtures, outlets and
 drains, and the protection and repair of the
 plumbing, etc., even when injured by freeze."
*611 Our review of the testimony convinces us that defendant and his wife exaggerated somewhat the condition of the apartment but, be that as it may, we are of the opinion that whatever condition existed was due to burning the wall heaters constantly without proper ventilation, and that if the heaters were defective defendant should have had them repaired or called on plaintiff to replace them. Cancellation of leases is not favored in the law and in our opinion defendant was not justified in abandoning the premises.
Defendant also contends that plaintiff is not entitled to recover any rental because he failed to "minimize his damages" by securing another tenant for the vacant apartment and crediting him for the rental paid. Plaintiff was under no obligation to do so. If a lessor obtains a judgment against his tenant for the rent for the unexpired term of the lease the right of occupancy of the premises belongs to the tenant for the full remaining term of the lease. (See Hollier v. Boustany, La.App., 180 So.2d 591 and cases there cited.)
Defendant reconvened for water and mildew damage to certain articles of clothing and furniture and for worry, concern, embarrassment and physical discomfort suffered by him.
 Pertinent to his reconventional demand is the following provision contained in the
lease. (See also LSA-R.S. 9:3221):
 "Responsibility Lessee assumes responsibility for the condition
 For Damages of the premises and Lessor will not be
 responsible for damage caused by leaks in the
 roof, by bursting of pipes by freezing or otherwise,
 or by any vices or defects of the leased
 property, or the consequences thereof, except
 in case of positive neglect or failure to take
 action toward the remedying of such defects
 within reasonable time after having received
 written notice from Lessee of such defects
 and the damage caused thereby. Should Lessee
 fail to promptly so notify Lessor, in writing,
 of any such defects, Lessee will become
 responsible for any damage resulting to Lessor
 or other parties."
Plaintiff, lessor, had no knowledge whatever, either actual or constructive, of the conditions in the apartment complained of by defendant until defendant's telephone call which took place either on January 17th or January 20th. At that time whatever damage defendant had suffered had already occurred. As we interpret the clause in the contract as well as the provisions of LSA-R.S. 9:3221 the lessee has no claim for any damage suffered by him by reason of any vices or defects in the leased property, or the consequences thereof, unless such damage is suffered after the lessor has had notice of such vices or defects and has failed to take action toward remedying them.
For the foregoing reasons that portion of the judgment appealed from which awards damages to defendant on his reconventional demand is reversed, and defendant's demand in reconvention is now dismissed; in all other respects the judgment is affirmed, all costs in the Trial Court and in this Court to be borne by the defendant, Lloyd E. Drewes, Jr.
Affirmed in part, reversed in part and rendered.