309 So.2d 797 (1975)
Irwin W. ROSENTHAL
v.
Jorge CABALLERO et al.
No. 6590.
Court of Appeal of Louisiana, Fourth Circuit.
March 12, 1975.
*799 Roos & Roos, Sidney G. Roos, New Orleans, for plaintiff-appellant.
Cockfield & Gravolet, James C. Cockfield, New Orleans, for defendant-appellee.
Before LEMMON, STOULIG and MORIAL, JJ.
MORIAL, Judge.
On November 18, 1971 plaintiff leased to Reinaldo de la Rosa under the terms and conditions of a Lease of Commercial Property (Gross) and a Lease Rider attached thereto, the premises 1409 Canal Street, New Orleans, Louisiana. The term of the lease was for twelve (12) months beginning on January 1, 1972 and ending on December 31, 1972 at a monthly rental of $375.00 payable in advance on the 1st of each month. Carlos de la Rosa executed the lease and rider as surety becoming bound with the lessee insolido.
Subsequently, on December 8, 1971 Carlos de la Rosa sold to John Boyd and Jorge Caballero the business known as Cafe Ole located in the premises described in the lease. Included among the property sold was one (1) Payne Air Conditioning Unit. The following day, December 9, 1971, Rosenthal, Reinaldo de la Rosa, Carlos de la Rosa, John Boyd, III, and Jorge Caballero executed a document providing for a sublease of the premises to Boyd and Caballero under the same terms and conditions as the de la Rosa lease and lease rider. Boyd and Caballero assumed and bound themselves individually and insolido to all the obligations of the de la Rosas under the lease and lease rider.
Rosenthal instituted this suit against Caballero for: (1) rent for the month of December 1972; (2) costs of removal of trash from the premises; (3) nine days rent for January 1973 at five times the daily rental; (4) cost of repairs to a canopy; (5) replacement of an air conditioner (Payne Air Conditioning Unit) and heater; and (6) costs, interest and attorney's fees of fifteen (15%) percent of the amount of his claim. Defendant answered in the nature of a general denial, except to aver that the lease and rider governed the rights and obligations of the parties. The district court rendered judgment in favor of the plaintiff for the December 1972 rent in the amount of $375.00 and the cost of removing trash in the amount of $38.00 for a total of $413.00 plus interest and costs. Defendant filed post judgment exceptions which he styled "non-joinder of necessary and/or indispensable parties and no right and/or no cause of action," which were overruled.
Plaintiff appeals and defendant answered the appeal. Defendant, absent a filing of exceptions in this court reurges the overruled exceptions. Plaintiff argues the district court erred in not rendering a money judgment to include items 3, 4, 5 and 6 of his claims as set forth hereinabove.
*800 During the trial plaintiff testified that he owned seventy-five (75%) percent of the leased premises and another person, a nephew, owned twenty-five (25%) percent. Defendant argues that plaintiff's co-owner of twenty-five (25%) percent of the leased premises is a necessary and/or indispensable party; that the district court judgment condemns defendant to pay 100% of the judgment to plaintiff and, the judgment, if affirmed, exposes the defendant to suit by plaintiff's co-owner for twenty-five (25%) of the judgment.
Defendant's dilatory exception of non-joinder of a necessary party having been filed after rendition of judgment was untimely. LSA-C.C.P. Articles 645 and 928. Defendant's peremptory exceptions of non-joinder of an indispensable party and no right and/or no cause of action having been pleaded subsequent to submission of the case and the decision therein rendered were likewise untimely filed. LSA-C.C.P. Articles 645 and 928. However, the non-joinder of an indispensable party or the failure to disclose a cause or a right of action in a plaintiff may be noticed by the trial court or this court on its own motion, or they may be considered by this court when the exceptions are filed for the first time in this court, if pleaded prior to submission of the case. LSA-C. C.P. Articles 645, 927, 2163.
An indispensable party is defined by Article 641, LSA-Code of Civil Procedure in the following language:
"Indispensable parties to an action are those whose interests in the subject matter are so interrelated, and would be so directly affected by the judgment, that a complete and equitable adjudication of the controversy cannot be made unless they are joined in the action.
"No adjudication of an action can be made unless all indispensable parties are joined therein."
In this case the lease, lease rider and sublease clearly reveal that those agreements were executed by, for and in the name of Irwin W. Rosenthal, lessor, who was in possession of the leased premises. Possession alone is sufficient to let a thing, ownership is not a prerequisite to a binding lease agreement. From the record the conclusion is inescapable that plaintiff had the right to let the premises. LSA-R.C.C. Articles 2681 and 2682; See: Lease by Non-Owners, 21 La.L.Rev. 606.
Under such circumstances, plaintiff's co-owner has no contractual rights nor obligations under the agreements sued upon. The rights of plaintiff's co-owner, if any, would not be so vitally or directly affected by the outcome of this litigation that a complete and equitable adjudication of the present controversy cannot be made absent his being joined herein. Plaintiff's co-owner is not an indispensable party.
Defendant's exception of no right and/or cause of action is likewise without merit. Plaintiff as lessor is the party to the contractual agreement under which he became bound to and did furnish lessees with the enjoyment of the property during the lease term. Lease is a personal contract under which the lessee receives the obligation of the lessor to do. Therefore, plaintiff has a right and cause of action to sue to assert his claims as lessor and to enforce the agreements he executed. Lack of title in a lessor is no defense to a suit for rent after the expiration of a lease. Paulding v. Dowell, 2 La. 452 (1831).
Defendant admitted withholding the December 1972 rent. Accordingly, under the evidence and terms of the contract of lease there is no dispute as to plaintiff's entitlement to item 1 of his claim.
The record clearly supports plaintiff's claim that the defendant did not "* * * return the premises broom clean and free from trash * * *" as required by the lease. Plaintiff proved that he paid $38.00 to have trash removed from the *801 premises and we find no error by the district court in including that amount in the judgment.
Plaintiff argues that the defendant failed to surrender the premises at the expiration of the lease on December 31, 1972 and he is due five times the daily rental for the first nine (9) days of January 1973. This contention is based upon lines 96 through 98 of the lease which provide:
"At the expiration of this lease, or its termination for other causes, Lessee is obligated to immediately surrender possession, and should Lessee fail to do so, he consents to pay any and all damages, but in no case less than five times the rent per day, with attorney's fees, costs, etc. * * *"
Plaintiff testified that he did not receive the keys to the lock on the front door of the premises until January 9, 1973. Contrary to plaintiff's testimony is that of Mr. and Mrs. Julius Lanfredi who subsequently became tenants of the building. Both testified that they viewed the property with the plaintiff sometime before the end of December 1972. Mrs. Lanfredi testified that plaintiff opened the premises with a key at the time she and her husband inspected the premises with a view to renting it.
Frank D. Natal, Jr., an employee of Caballero, testified that the keys to the premises were given to him by the defendant and it was his responsibility to see that they were delivered to the plaintiff. Sometime during the month of October while Caballero was in Europe, Natal delivered an envelope marked "Keys to Latin Quarter"[1] to the office of plaintiff and gave it to his secretary.
While plaintiff argues that the premises were not surrendered to him until January 9, 1973, from a review of the testimony we conclude, as apparently the district court did, that in fact plaintiff had unrestricted access to the premises prior to the expiration of the lease and that the defendant in effect did surrender possession of the leased premises no later than the expiration of the term of the lease or prior thereto. Plaintiff did in fact lease the premises to other persons for a term commencing January 1, 1973.
Plaintiff argues that he is entitled to $40.00 for repairs to a canopy over the entrance to the premises as the result of the falling of a sign placed over the entrance by the defendant in violation of the lease. We disagree.
The lease states:
"Lessee is obligated not to display in, on, or above the leased premises any sign or decoration, the nature of which, in the judgment of Lessor is dangerous, unsightly or detrimental to the property. Lessee is prohibited from painting any signs on the leased property without the written consent of Lessor, and Lessee is obligated to promptly remove at or before the expiration of this lease, any and all signs painted or placed in or upon any part of the leased premises, to Lessor's satisfaction and Lessee is obligated to pay the cost of said removal, plus agent's attorney's fees, in event of failure to carry out this obligation."
and the lease rider provides:
"No signs shall be placed on or about the leased premises, or on the walls of the building thereof, or on the canopy in front of the leased premises which advertise anything but lessee's business. Lessor [sic] shall submit to lessor, prior to erection or painting, any sign lessee desires to so erect and should lessor refuse to permit same to be erected or painted, then lessee shall not erect or paint said sign."
Plaintiff testified that he was aware the sign had been erected and at no time did he complain to the defendant or demand its removal. Plaintiff acquiesced *802 in the erection of the sign and, having failed to exercise his right to have it removed, is estopped from claiming any damages resulting therefrom. Further, Herman Singleton, a roofer who repaired the canopy over the entire front of the leased premises testified. He was of the opinion that the canopy had to be replaced because it was worn and "had holes in it." Under the lease provisions defendant had no obligation other than to "* * * return the premises broom clean and free from trash, and in like good order as received by actual delivery of the keys to Lessor or Agent, the usual decay, wear and tear excepted." Accordingly, plaintiff is not entitled to reimbursement for repairs to the canopy.
Plaintiff contends that the Payne unit was "valueless" at the time defendant surrendered possession of the premises. He bases his claim for the cost of replacement of the Payne unit on the following provisions of the lease and lease rider:
"* * * All additions, alterations or improvements made by Lessee with or without consent of Lessor, no matter how attached (except movable trade fixtures), must remain the property of Lessor, unless otherwise stipulated herein, Lessee, however, expressly waiving all right to compensation therefor. * * *"
* * * * * *
"At the option of the lessor, any improvements made or installed in the leased premises, or any improvements previously made by former lessees, shall become the property of the lessor, no matter how attached, or the lessor may demand restoration of the premises to its former condition, at his option. * * *"
While the foregoing provisions of the lease and lease rider provide for such improvements as the Payne unit to become the property of the lessor, the lease specifically excludes any obligation on the part of the lessee for "the usual decay, wear and tear" of the air conditioning and heating system.
The Payne unit and heater the value of which the plaintiff claims, was replaced by the Lanfredis with a new unit installed at no cost to the plaintiff. Plaintiff is unable to refute the testimony of Michael O'Brien of Regal Air Conditioning & Heating. He testified that he recommended replacement of the heater because it was in very old and in poor condition. He opined that from a visual standpoint the air conditioning unit was "run down." O'Brien further stated that the heater was connected and he thought the Payne unit was connected also. Further, the record is barren of any testimony that the condition of the Payne unit and heater was not the result of "* * * usual decay, wear and tear * * *" during the term of the lease. We are unable to find any language in either the lease, lease rider, or sublease to the effect the lessee must replace worn out equipment as a result of reasonable wear and tear during the term of the lease. On the basis of the record before us, to hold that the lessee has the obligation to replace the Payne unit and heater because of their very old and poor condition would give the clauses of the agreements of lease a broader interpretation than that intended by the parties.
Pertinent to plaintiff's claim for attorney's fees is that part of the lease which provides:
"* * * Should an Agent or Attorney be employed to give special attention to the enforcement or protection of any claim of Lessor arising from this lease, Lessee shall pay, as fees and compensation to such Agent or Attorney an additional sum of fifteen per cent of the amount of such claim, the minimum fee, however, be $100.00, or if the claim be not for money, then such sum as will constitute a reasonable fee, together with all costs, charges and expenses."
Having awarded plaintiff a judgment for rent for the month of December in the *803 amount of $375.00 and $38.00 for removing trash from the premises, the district court erred in not awarding plaintiff the minimum attorney's fee of $100.00.
For the reasons assigned, the judgment of the district court is amended to increase the amount awarded the plaintiff by $100.00 attorney's fees to the sum of $513.00. Defendant is to pay all court costs.
Amended and affirmed.
NOTES
[1] Caballero and Boyd changed the name of the business from Cafe Ole to Latin Quarter.