432 So.2d 396 (1983)
Mary Jane HEBERT
v.
Karen Ann NEYREY & Sandy T. Russo.
No. 82 CA 0727.
Court of Appeal of Louisiana, First Circuit.
May 17, 1983.
*397 Paul M. Hebert, Jr., Baton Rouge, for appellee (plaintiff).
Nicholas F. LaRocca, Jr., Morgan City, for appellants (defendants).
Before COVINGTON, LANIER and ALFORD, JJ.
*398 LANIER, Judge.
This is a suit in contract by a lessor on a written lease for residential property seeking $270.94 which was deducted from a monthly rental payment by the tenants for repairs to the leased premises and a $100 contractual attorney fee. The tenants answered the lessor's petition and filed a reconventional demand for the cost of the repairs and $500 each for mental anguish, humiliation, embarrassment, inconvenience and extreme grief. The trial court rendered judgment in favor of the lessor as prayed for and dismissed the reconventional demand. This suspensive appeal followed.

FACTS
Mary Jane Hebert leased to Karen Ann Neyrey and Sandy T. Russo the residential premises located at 812 West Garfield Street in Baton Rouge, Louisiana, for a term of ten months commencing on August 1, 1981, and ending on May 31, 1982. The monthly rental was $315. The written lease agreement was a standard lease form provided by the Apartment Owners and Builders Association of Greater Baton Rouge, Inc.
The lessees were students at Louisiana State University. When they completed their semester examinations in December of 1981, they left the leased premises for a period of approximately four weeks and went to their respective homes to visit. Ms. Russo lived in Morgan City, Louisiana, and Ms. Neyrey lived in New York City. Ms. Neyrey notified Mrs. Hebert that the premises would be unoccupied during the semester break.
On or about January 10, 1982, the lessees returned to the leased premises and found that their water pipes were frozen due to a severe freeze. Ms. Neyrey immediately notified Mrs. Hebert of the frozen pipes and was advised to wait until the pipes thawed to determine their condition. On or about January 13, 1982, the pipes thawed out and began gushing water. Ms. Neyrey contacted Mrs. Hebert and requested that the pipes be repaired. Mrs. Hebert advised that she would not pay for the repairs because that was the obligation of the lessees under the lease. Ms. Neyrey also contacted the Baton Rouge Waterworks and had the water cut off.
On January 14, 1982, the lessees notified the lessor in writing of the broken pipes and advised her that "... unless you initiate repair promptly I shall secure the services of a plumber and deduct the charges from next month's rent." Also on January 14, 1982, Ms. Neyrey contacted Louis DeJohn, a plumber, who repaired the leaking pipes for $270.94. The lessees paid the cost of these repairs and deducted this amount from the February 1982 rental payment. This suit followed.

DUTY TO REPAIR BROKEN PIPES
The courts are bound to give legal effect to all written contracts according to the true intent of the parties and this intent is to be determined by the words of the contract when these are clear, explicit and lead to no absurd consequences. La.C.C. arts. 1901 and 1945; Campesi v. Margaret Plantation, 417 So.2d 1265 (La.App. 1st Cir. 1982), writ denied 422 So.2d 163 (La.1982). This rule is applicable to contracts of lease. Brignac v. Boisdore, 272 So.2d 463 (La.App. 4th Cir.1973), affirmed 288 So.2d 31 (La. 1973); Dikert v. Ruiz, 231 So.2d 633 (La. App. 4th Cir.1970). The meaning and intent of the parties to the written contract in such cases must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence. La.C.C. art. 2276; Tauzin v. Claitor, 417 So.2d 1304 (La.App. 1st Cir.1982), writ denied 422 So.2d 423 (La.1982). In such a case, a person who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, or that it was not explained, or that he did not understand it. Lama v. Manale, 218 La. 511, 50 So.2d 15 (1950); Jackson v. Continental Casualty Company, 402 So.2d 175 (La.App. 1st Cir. 1981), reversed on other grounds 412 So.2d 1364 (La.1982); Mitchell v. Bertolla, 397 So.2d 56 (La.App. 2nd Cir.1981), writ denied 400 So.2d 669 (La.1981); Lazybug Shops, *399 Inc. v. American District Telegraph Co., 374 So.2d 183 (La.App. 4th Cir.1979), writ denied 376 So.2d 1271 (La.1979). However, when the terms of a written contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, or fraud is alleged, parol evidence is admissible to clarify the ambiguity or show the intention of the parties or prove the fraud. La.C.C. arts. 1847 et seq.; Dixie Campers, Inc. v. Vesely Company, 398 So.2d 1087 (La.1981).
To determine upon whom devolved the obligation to repair the broken pipes, three different provisions of the written lease must be analyzed. For purposes of ready reference, we have denominated these provisions A, B and C, respectively.

PROVISION A
Provision A is entitled "Warranty" and provides as follows:
"Lessor warrants that the leased premises are in good condition except as otherwise stipulated herein. Lessee accepts them in such condition and agrees to keep them in such condition during the term of the lease at his expense and to return them to Lessor in the same condition at the termination of the lease, normal decay, wear and tear excepted."
Under general law, a lessor has an obligation to maintain the leased thing in a condition such as to serve for the use for which it is hired. La.C.C. art. 2692. The lessor has an obligation to deliver the thing leased in good condition, and is obligated to make all repairs which may accidentally become necessary, except those which the tenant is bound to make, such as repairing the hearth, plastering the walls and replacing broken window glass. La.C.C. arts. 2693 and 2716. If a lessor refuses or neglects to make necessary repairs for which he is obligated, the lessee may cause them to be made and is authorized to deduct the price of the repairs from the rent. La.C.C. art. 2694; Billeaudeaux v. Soileau, 303 So.2d 810 (La.App. 3rd Cir.1974); Bialy v. Katz, 273 So.2d 360 (La.App. 3rd Cir.1973), writ denied 275 So.2d 870 (La.1973). When the lessees agreed in Provision A to keep the leased premises in good condition at their expense during the term of the lease, they relieved the lessor of the duty to repair imposed upon her by the above statutes. Maggio v. Cox, 63 So.2d 167 (La.App. 2nd Cir.1953).

PROVISION B
Provision B is found in a section entitled "Non-Liability of Lessor" and provides as follows:
"Lessor will not be responsible for damage caused by leaks in the roof, by bursting pipes, by freezing or otherwise, or by any vices or defects of the leased property, or the consequences thereof, nor will Lessor be liable in damages for injury caused by any vices or defects of the leased property to Lessee or any tenant or occupant, or to anyone in the building or on the premises, except in case of positive neglect or failure to take action toward the remedying of such defects within reasonable time after having written notice from Lessee of such defects and the damage caused thereby. Should Lessee fail to so notify Lessor promptly, in writing, of any such defects, Lessee will become responsible for any damage or injury resulting to Lessor or other parties."[1]
Under general law, a lessor guarantees the lessee against all vices and defects of the thing leased, even if they arise after the lease commences, provided they do not arise from the fault of the lessee. If the lessee should suffer any loss as a result of the *400 vices and defects, the lessor is bound to indemnify him for the same. La.C.C. art. 2695. However, if the lessee assumes responsibility for the condition of the leased premises, the owner is not liable for injury to the lessee or anyone on the premises caused by a defect in the premises unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time. La.R.S. 9:3221; Add Chemical Company v. Gulf-Marine Fabricators, Inc., 345 So.2d 216 (La.App. 3rd Cir.1977), writ denied 347 So.2d 263 (La.1977).
In Provision A, the lessees assumed the responsibility of maintaining the leased premises in good condition during the term of the lease at their own expense. In the paragraph immediately preceding Provision B, the lessees contractually released the lessor from liability for injury or damage to themselves, their families, guests, employees or invitees, occurring on the leased premises and agreed to indemnify and hold the lessor harmless therefor. Provision B, by tracking the language of La.R.S. 9:3221, transfers liability for damages to third persons for defects in the premises from the lessor to the lessees, unless the lessor neglects or fails to remedy such defects within a reasonable time after receiving written notice of them from the lessees. Meyers v. Drewes, 196 So.2d 607 (La.App. 4th Cir. 1967); Green v. Southern Furniture Company, 94 So.2d 508 (La.App. 1st Cir.1957). There is a distinction between liability for damages occasioned by defects in the premises and who has the obligation to repair such defects. Provisions A and C pertain to the duty to repair and Provision B pertains to liability for damages.

PROVISION C
Provision C is entitled "Repairs and Maintenance" and provides as follows:
"No repairs shall be due Lessee by Lessor except to the roof and such as may be rendered necessary by fire or other casualty not occasioned by Lessee's fault or negligence. Lessee agrees to report in writing to Lessor any damage to the leased premises within twenty-four hours after its happening, and upon his failure to do so, Lessee shall be bound to repair any consequent or resulting damage.
"Should Lessee fail to make such repairs as he is obligated to make hereunder, Lessor may, at his option, have the repairs made and Lessee agrees to reimburse Lessor for the cost."
In Provision C, the lessor obligates herself to repair the roof and those conditions caused by fire or "other casualty", provided the need for these repairs was not caused by the lessee's fault or negligence.[2] When Provisions A and C are construed together, it is apparent that Provision C is an exception to the terms of Provision A. La.C.C. arts. 1951 and 1955; Pendleton v. Shell Oil Company, 408 So.2d 1341 (La.1982).
If we assume for purposes of discussion that the term "other casualty" contemplates water pipes being ruptured as a result of a severe freeze,[3] the lessor will only be liable for their repair if the damage was not due to the fault of the lessees. This contractual provision incorporates the general law that a lessee is bound to enjoy the thing leased as a good administrator (La.C.C. art. 2710) and is liable for injuries and losses sustained through his own fault (La.C.C. art. 2721).
The evidence of record shows that the water pipes on the leased premises were broken as a result of a severe freeze. The lessees took no precautions to protect the water pipes from freezing. Louis DeJohn, the plumber who fixed the pipes, testified that the pipes could have been protected by *401 three methods: (1) the pipes could have been wrapped with insulation; (2) the water could have been shut off and the pipes drained; or, (3) the water could have been allowed to run through the pipes during the freeze. DeJohn testified that the best method was to allow the water to keep running, but that this was discouraged because the continuous running of water and/or water escaping due to broken pipes caused low water pressure. DeJohn testified that wrapping the pipes in insulation was the least desirable method and he was aware of several situations where water pipes ruptured even though they were insulated. DeJohn indicated that on the leased premises a special water meter key was necessary to turn off the water. Such a key would be available only through a plumbing contractor. If the water is drained from a line, the line can only rupture in places where water might accumulate. Ms. Neyrey indicated that when she observed the water rushing from the ruptured pipes, she called the Baton Rouge Waterworks and had the water cut off. If she could have had the water cut off after the freeze, then she could have had the water cut off in this manner prior to the freeze. Either Ms. Neyrey or Ms. Russo could have made arrangements for the pipes to be drained after the water was cut off. The lessees had an obligation under Provision A of the lease to maintain the leased premises in good condition. The lessees had an obligation under the general law to maintain the leased premises as good administrators. The trial judge determined in his reasons for judgment that if the lessees had taken ordinary measures to protect the pipes from freezing, there would have been no damages and that this failure to act was negligence. After reviewing the entirety of the record, we cannot say that this factual finding is clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978).
Because the damages to the leased premises were caused by the negligence of the lessees, they, and not the lessor, had the duty to make the repairs. Accordingly, the lessees were not legally entitled to withhold the cost of repairs from the February 1982 rental payment. For this same reason, the lessees are not entitled to prevail on their reconventional demands.

CONTRACTUAL ATTORNEY FEE
The prevailing party in litigation is not entitled to the award of an attorney fee unless it is authorized by statute or contract. Killebrew v. Abbott Laboratories, 359 So.2d 1275 (La.1978). Parties to a contract may lawfully obligate themselves for the payment of an attorney fee. Maloney v. Oak Builders, Inc., 256 La. 85, 235 So.2d 386 (1970). Attorney fees are subject to review and control by the courts. Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1979). Although a written agreement may provide for a specified attorney fee, the courts may inquire into the reasonableness of the fee. Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La.1982).
The lease contract contains the following provision:
"Should an Agent or Attorney be employed to give special attention to the enforcement or protection of any claim of the Lessor arising from this lease, the Lessee shall pay, as fees and compensation to such Agent or Attorney, an additional sum of twenty-five (25%) per cent of the amount of such claim, the minimum fee, however, to be $100.00, or if the claim be not money, then such sum as will constitute a reasonable fee, together with all costs, charges and expenses."
The lessees contend that the lessor is not entitled to an attorney fee because no proof was offered as to the value of the services rendered. While it is true that a court is required to allow the introduction of "all admissible evidence" when an attorney fee is claimed (La.R.S. 13:3738), nevertheless, proof of the value of an attorney's services is not necessary where the services are evident from the record and/or are rendered under the supervision of the court. Lokey v. Dixie Buick, Inc., 400 So.2d 322 (La.App. 4th Cir.1981); Babineaux v. Black, 396 So.2d 584 (La.App. 3rd Cir.1981); State, *402 Department of Highways v. Terrebonne, 349 So.2d 936 (La.App. 1st Cir.1977), writ denied 351 So.2d 166 (La.1977).
Lessees contend that counsel for the lessor is her husband and that an attorney fee is not due where an attorney represents himself or handles a matter in which he has an interest, citing Westenberger v. Bernard, 160 So.2d 312 (La.App. 4th Cir. 1964). In Westenberger, an attorney filed suit against a husband and wife for an attorney fee arising out of his representation of the wife in a suit for separation. The wife failed to appear at a designated time and place for the taking of a deposition and the attorney sought an attorney fee as a sanction. The court ruled that the plaintiff-attorney could not recover for three reasons: (1) he did not give the husband written notice of the deposition; (2) the wife was directed to appear before plaintiff as the notary public and the plaintiff was not a disinterested party; and, (3) the plaintiff could not recover an attorney fee for representing himself. We find Westenberger factually distinguishable from the instant case. This suit is by Mary Jane Hebert against the lessees. Her attorney-husband is not a party to these proceedings and it has not been claimed in pleadings that he should be. The parties in the instant case contractually agreed to an attorney fee, and that contract is the law of the case. Based on these facts, the lessor is entitled to the fee. See McHale v. Lake Charles American Press, 390 So.2d 556 (La. App. 3rd Cir.1980), writ denied 396 So.2d 902 (La.1981).
After reviewing the pleadings and the transcript, we believe that the fee of $100 is reasonable. Rosenthal v. Caballero, 309 So.2d 797 (La.App. 4th Cir.1975).

CONCLUSION
For the foregoing reasons, the judgment of the trial court is correct and is affirmed. The appellants are cast for all costs of this appeal.
AFFIRMED.
NOTES
[1] In the paragraph immediately preceding Provision B, and also located in the section entitled "Non-Liability of Lessor", the lessees agreed to relieve the lessor of any liability for injury or damage to person or property of the lessees, their families, guests, employees or invitees, occurring on the leased premises, however caused or arising, including the negligence of the lessor, his agents or employees, and the lessees agreed to indemnify and hold the lessor harmless therefor.
[2] This provision demonstrates that Provision C pertains to the duty to repair and Provision B pertains to liability for damages. Under Provision B, the lessor is not "responsible for damage caused by leaks in the roof", however, under Provision C, the lessor specifically assumes the obligation to repair the roof.
[3] See, for example, Cook & Laurie Contracting Co. v. Denis, 124 La. 161, 49 So. 1014 (1909); Namie v. Milam & Son, Inc., 349 So.2d 996 (La.App. 2nd Cir.1977), writ denied 351 So.2d 1204 (La.1977); Black's Law Dictionary, 198 (5th ed. 1979).