445 So.2d 1165 (1984)
Mary Jane HEBERT
v.
Karen Ann NEYREY and Sandy T. Russo.
No. 83-C-1261.
Supreme Court of Louisiana.
January 16, 1984.
*1166 Nicholas F. LaRocca, Jr., Lippman, Mahfouz, Martin & LaRocca, Morgan City, for applicant.
Paul M. Hebert, Jr., Breazeale, Sachse & Wilson, Baton Rouge, for respondents.
CALOGERO, Justice.
This case presents the question of who under the provisions of a lease bears the responsibility for the cost of repairing water pipes which burst during a record-breaking freeze in the Baton Rouge area in January, 1982, at a time when the lessees were absent from the city. Both lower courts interpreted the lease provisions to place the financial responsibility for such repairs on the defendant/lessees. Hebert v. Neyrey, 432 So.2d 396 (La.App. 1st Cir. 1983). Upon review and for the reasons which follow, we decide that the lessor in this instance should bear the cost of those repairs. Additionally we determine that the lessor does not owe the defendants any non-pecuniary damages. And because we reverse the decision on the main demand and render judgment in favor of the lessees, we need not address the question of the awarding of attorney's fees to the lessor under the lease.

FACTS
The facts of this case are clearly set forth in the Court of Appeal opinion at 432 So.2d 398:
Mary Jane Hebert leased to Karen Neyrey and Sandy T. Russo the residential premises located at 812 West Garfield Street in Baton Rouge, Louisiana, for a term of ten months commencing on August 1, 1981, and ending on May 31, 1982. The monthly rental was $315. The written lease agreement was a standard lease provided by the Apartment Owners and Builders Association of Greater Baton Rouge, Inc.
The lessees were students at Louisiana State University. When they completed their semester examinations in December of 1981, they left the leased premises for a period of approximately four weeks and went to their respective homes to *1167 visit. Ms. Russo lived in Morgan City, Louisiana, and Ms. Neyrey lived in New York City. Ms. Neyrey notified Mrs. Hebert that the premises would be unoccupied during the semester break.
On or about January 10, 1982, the lessees returned to the leased premises and found that their water pipes were frozen due to a severe freeze. Ms. Neyrey immediately notified Mrs. Hebert of the frozen pipes and was advised to wait until the pipes thawed to determine their condition. On or about January 13, 1982, the pipes thawed out and began gushing water. Ms. Neyrey contacted Mrs. Hebert and requested that the pipes be repaired. Mrs. Hebert advised that she would not pay for the repairs because that was the obligation of the lessees under the lease. Ms. Neyrey also contacted the Baton Rouge Waterworks and had the water cut off.
On January 14, 1982, the lessees notified the lessor in writing of the broken pipes and advised her that "... unless you initiate repair promptly I shall secure the services of a plumber and deduct the charges from next month's rent." Also on January 14, 1982, Ms. Neyrey contacted Louis DeJohn, a plumber, who repaired the leaking pipes for $270.94. The lessees paid the cost of these repairs and deducted this amount from the February 1982 rental payment. This suit followed.

DUTY TO REPAIR BROKEN PIPES
The trial court found that the repairs were occasioned by the tenants' fault because, upon leaving the premises for the semester break, they took no precautions to prevent the pipes from freezing during their absence at a time when subfreezing temperatures were not uncommon in Baton Rouge. The trial judge found under the terms of the lease that the tenants were responsible for paying for the pipes' repair. And because of his finding the defendants at fault, the trial judge denied their reconventional demand for damages. Finally he awarded the plaintiff one hundred dollars in attorney's fees under the express language of the lease.[1] The defendants' appealed the district court judgment against them.
The Court of Appeal, in turn, examined the separate applicable sections of the lease in this case in conjunction with a discussion of the appropriate codal provisions and concluded that the Repairs and Maintenance section of the lease[2] obligated the lessor to repair the roof and those conditions "caused by fire or `other casualty'" provided the need for these repairs was "not caused by the lessee's fault or negligence." 432 So.2d at 400. Then, assuming that "the term `other casualty' contemplates water pipes being ruptured as a result of a severe freeze," supra, the Court of Appeal concluded that the need for repair of the pipes in this case was caused by the lessees' fault and negligence.
The Court of Appeal's finding that the need for repair of the pipes was caused by the lessees' fault or negligence prompted *1168 our granting the defendants' writ application. We do not dispute, nor do the defendants, the appellate court's recitation of the applicable law in this matter.[3]
*1169 The Court of Appeal, and presumably the trial court, were prompted to rule as they did on the negligence question by the following considerations: A tenant could prevent frozen pipes in a raised single house by insulating the exposed pipes under the house, by shutting off the water at the main valve and draining the pipes, by letting the water run during the subfreezing temperatures. A plumber testified at trial that shutting off the water was the preferred means of preventing frozen pipes because letting the water run could cause dangerously low water pressure for other city services. Although there was testimony that it might have been difficult for the tenants themselves to turn off the water, the appellate court stated that "[i]f [the lessee Ms. Neyrey] could have had the water cut off after the freeze, then she could have had the water cut off in this manner prior to the freeze. Either Ms. Neyrey or [her co-tenant] Ms. Russo could have made arrangements for the pipes to have been drained after the water was cut off." 432 So.2d at 401. In the lower courts' opinions, had the lessees taken ordinary measures to protect the pipes from freezing, there would have been no damages. Therefore the tenants' failure to act constituted negligence.
In making our findings, we assess the facts differently. In deciding whether these students were at fault or negligent, we are influenced by the following evidence as it is established in this record.
The defendants were not permanent residents of the Baton Rouge area. They were two Louisiana State University students with homes in Morgan City, Louisiana and New York, New York respectively. In the late summer of 1981, they signed a lease for a single raised house in Baton Rouge, which lease was for the school year from August, 1981, through May, 1982. It was only a little over four months later while both were away on vacation between academic semesters that the exposed pipes of this raised cottage froze during unprecedented low temperatures.
Both lessees were unfamiliar with the protective measures that might be called for to prevent residential water pipes from freezing in the winter. Neither had lived in a raised house before, nor had either the previous experience of living in any house where the pipes had frozen.
Testimony at trial established that it was not an easy task to shut off the water to this house. Apparently the only way to turn off the water to this residence manually was at the water meter box in the street, by means of a special water meter key available only to plumbers and/or by purchase from a hardware plumbing-supply store. The only tool these two students had was a hammer used for hanging pictures.
Furthermore there was no reason for the students to have anticipated the onslaught of unprecedented below-freezing temperatures during their absence from Baton Rouge. While weather records and data were not introduced into evidence, the parties concede that the cold freezing weather *1170 of the sort experienced in Baton Rouge during the time in question in January, 1982, was more of a rarity than a frequent occurrence. There was testimony that the Baton Rouge area had not experienced temperatures so low since about 1963, some eighteen years earlier at a time when the students themselves were probably infants. Furthermore, at the time that they each left for their month long semester break, the Baton Rouge weather was warm and temperate.
Before leaving, the students expressly notified their landlady, the plaintiff in this case, that they were leaving the house unoccupied and that they had instructed a neighbor to take in the mail. There was discussion of the problems of vandalism and theft, not of the weather. The landlady was well aware of the defendants' leaving the house unoccupied and the house was accessible to her. She testified that her own children attended Louisiana State University, so she was familiar with the university schedule. This unprecedented freeze happened before the students arrived back in Baton Rouge from their semester break and the pipes were frozen upon their return to the leased premises.
Under these circumstances, we find the lower courts were clearly wrong in finding fault or negligence on the part of these LSU students. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Because the need for repairing the pipes was not caused by the lessees' fault or negligence, the lessor under the Repair and Maintenance section of the lease was obligated herself to repair those conditions caused by "other casualties," the freeze.

NON-PECUNIARY DAMAGES
Defendants in brief to this Court restate their demand for non-pecuniary damages for humiliation, inconvenience, embarrassment and mental anguish: a claim disallowed upon the lower courts' ruling in favor of the landlady. Upon review we decline to award non-pecuniary damages despite our reversal on the question of defendants' negligence.
We find that there was an insufficient showing in this record that any such damages were sustained, in some measure as a result of the speedy repair these tenants accomplished. Furthermore, it is questionable whether damages for inconvenience, humiliation, embarrassment, and mental anguish would be due in this case even were they sustained.[4]

ATTORNEY'S FEES
Finally, as stated at the outset of this opinion, because we reverse the lower courts and find the lessor responsible for repairing the pipes in question, we need not consider liability under the lease contract for the lessor's attorney's fees.

Decree
For the foregoing reasons, the lower courts' casting the defendants for two hundred seventy and 94/100 ($270.94) dollars and for one hundred and no/100 ($100.00) dollars attorney's fees, is reversed. Plaintiff's petition is dismissed at her cost. Judgment of the lower courts' dismissing the defendant's reconventional demand is affirmed.
REVERSED IN PART; AFFIRMED IN PART.
DENNIS, J., concurs.
DIXON, C.J., concurs, disagreeing with treatment of the issue of damages.
NOTES
[1] Lines 68-73 of the lease provide:

Should an Agent or Attorney be employed to give special attention to the enforcement or protection of any claim of the Lessor arising from this lease, the Lessee shall pay, as fees and compensation to such Agent or Attorney, an additional sum of twenty-five (25%) per cent of the amount of such claim, the minimum fee, however, to be $100.00, or if the claim be not money, then such sum as will constitute a reasonable fee, together with all costs, charges and expenses.
[2] The Repairs and Maintenance section of the lease in this case appears at lines 133-139 and reads in full as follows:

No repairs shall be due Lessee by Lessor except to the roof and such as may be rendered necessary by fire or other casualty not occasioned by Lessee's fault or negligence. Lessee agrees to report in writing to Lessor any damage to the leased premises within twenty-four hours after its happening, and upon his failure to do so, Lessee shall be bound to repair any consequent or resulting damage.
Should Lessee fail to make such repairs as he is obligated to make hereunder, Lessor may, at his option, have the repairs made and Lessee agrees to reimburse Lessor for the cost. (Emphasis provided.)
[3] The discussion of the law by the Court of Appeal appears at 432 So.2d 399, 400 and was as follows:

To determine upon whom devolved the obligation to repair the broken pipes, three different provisions of the written lease must be analyzed. For purposes of ready reference, we have denominated these provisions A, B, and C, respectively.
PROVISION A
Provision A is entitled "Warranty" and provides as follows:
"Lessor warrants that the leased premises are in good condition except as otherwise stipulated herein. Lessee accepts them in such condition and agrees to keep them in such condition during the term of the lease at his expense and to return them to Lessor in the same condition at the termination of the lease, normal decay, wear and tear excepted." Under general law, a lessor has an obligation to maintain the leased thing in a condition such as to serve for the use for which it is hired. La.C.C. art. 2692. The lessor has an obligation to deliver the thing leased in good condition, and is obligated to make all repairs which may accidentally become necessary, except those which the tenant is bound to make, such as repairing the hearth, plastering the walls and replacing broken window glass. La.C.C. arts. 2693 and 2716. If a lessor refuses or neglects to make necessary repairs for which he is obligated, the lessee may cause them to be made and is authorized to deduct the price of the repairs from the rent. La.C.C. art. 2694; Billeaudeaux v. Soileau, 303 So.2d 810 (La.App. 3rd Cir.1974); Bialy v. Katz, 273 So.2d 360 (La.App. 3rd Cir.1973), writ denied 275 So.2d 870 (La.1973). When the lessees agreed in Provision A to keep the leased premises in good condition at their expense during the term of the lease, they relieved the lessor of the duty to repair imposed upon her by the above statutes. Maggio v. Cox, 63 So.2d 167 (La.App. 2nd Cir.1953).
PROVISION B
Provision B is found in a section entitled "Non-Liability of Lessor" and provides as follows:
"Lessor will not be responsible for damages caused by leaks in the roof, by bursting pipes, by freezing or otherwise, or by any vices or defects of the leased property, or the consequences thereof, nor will Lessor be liable in damages for injury caused by any vices or defects of the leased property to Lessee or any tenant or occupant, or to anyone in the building or on the premises, except in case of positive neglect or failure to take action toward the remedying of such defects within reasonable time after having written notice from Lessee of such defects and the damage caused thereby. Should Lessee fail to so notify Lessor promptly, in writing, of any such defects, Lessee will become responsible for any damage or injury resulting to Lessor or other parties."1
Under general law, a lessor guarantees the lessee against all vices and defects of the thing leased, even if they arise after the lease commences, provided they do not arise from the fault of the lessee. If the lessee should suffer any loss as a result of the vices and defects, the lessor is bound to indemnify him for the same. La.C.C. art. 2695. However, if the lessee assumes responsibility for the condition of the leased premises, the owner is not liable for injury to the lessee or anyone on the premises caused by a defect in the premises unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time. La.R.S. 9:3221; Add Chemical Company v. Gulf-Marine Fabricators, Inc. 345 So.2d 216 (La.App. 3rd Cir.1977), writ denied 347 So.2d 263 (La.1977).
In Provision A, the lessees assumed the responsibility of maintaining the leased premises in good condition during the term of the lease at their own expense. In the paragraph immediately preceding Provision B, the lessees contractually released the lessor from liability for injury or damage to themselves, their families, guests, employees or invitees, occuring on the leased premises and agreed to indemnify and hold the lessor harmless therefor. Provision B, by tracking the language of La.R.S. 9:3221, transfers liability for damages to third persons for defects in the premises from the lessor to the lessees, unless the lessor neglects or fails to remedy such defects within a reasonable time after receiving written notice of them from the lessees. Meyers v. Drewes, 196 So.2d 607 (La.App. 4th Cir.1967); Green v. Southern Furniture Company, 94 So.2d 508 (La.App. 1st Cir.1957). There is a distinction between liability for damages occasioned by defects in the premises and who has the obligation to repair such defects. Provisions A and C pertain to the duty to repair and Provision B pertains to liability for damages.
PROVISION C
Provision C is entitled "Repairs and Maintenance" and provides as follows:
"No repairs shall be due Lessee by Lessor except to the roof and such as may be rendered necessary by fire or other casualty not occasioned by Lessee's fault or negligence. Lessee agrees to report in writing to Lessor any damage to the leased premises within twenty-four hours after its happening, and upon his failure to do so, Lessee shall be bound to repair any consequence or resulting damage.
"Should Lessee fail to make such repairs as he is obligated to make hereunder, Lessor may, at his option, have the repairs made and Lessee agrees to reimburse Lessor for the cost." In Provision C, the lessor obligates herself to repair the roof and those conditions caused by fire or "other casualty", provided the need for these repairs was not caused by the lessee's fault or negligence.2 When Provisions A and C are construed together it is apparent that Provision C is an exception to the terms of Provision A. La.C.C. arts. 1951 and 1955; Pendleton v. Shell Oil Company, 408 So.2d 1341 (La.1982). (Emphasis provided.)
1 In the paragraph immediately preceding Provision B, and also located in the section entitled "Non-Liability of Lessor", the lessees agreed to relieve the lessor of any liability for injury or damage to person or property of the lessees, their families, guest, employees or invitees, occurring on the leased premises, however caused or arising, including the negligence of the lessor, his agents or employees, and the lessees agreed to indemnify and hold the lessor harmless therefor.
2 This Provision demonstrates that Provision C pertains to the duty to repair and Provision B pertains to liability for damages. Under Provision B, the lessor is not "responsible for damage caused by leaks in the roof", however, under Provision C, the lessor specifically assumes the obligation to repair the roof.
[4] In Meador v. Toyota of Jefferson, Inc., 332 So.2d 433 (La.1976), we held that non-pecuniary damages were recoverable under La.C.C. art. 1934(3) only if the principal object of the contract was intellectual gratification or enjoyment. Gele v. Markey, 387 So.2d 1162 (La.1980) cited to us by the defense counsel is not applicable in this case. The freezing of the pipes, their bursting and the need for their repair was not caused by a defect in the premises but by a "casualty", which resulted when the temperature fell unusually low to subfreezing levels.