GULOTTA, Chief Judge.
In this landlord-tenant dispute, the defendant lessee appeals from a $4,236.55 judgment in favor of the lessor for excess water bills resulting from a plumbing leak in the leased premises. The trial judge concluded that the lessee’s failure to maintain and repair the plumbing as required by the lease had caused the increased charges borne by the lessor. The lessee contends, however, that the lessor was solely at fault for the extraordinary bills by failing to notify him of the increased charges or inspect the premises sooner, or to have the bills reduced in an administrative hearing with the Sewerage and Water Board. We affirm.
The facts are essentially undisputed. Plaintiff, a partnership known as The French Eighth, leased the second floor of its property at 619 Decatur Street in New Orleans to Alan B. Watts as offices for his advertising business. Although The French Eighth paid the monthly water bills for the entire building, the written lease provided that Watts was to assume "... the maintenance of the plumbing, including fixtures, outlets and drains, and the protection and repair of said plumbing, etc., even when injured by freeze.”
Although the monthly water bills for the premises had ranged between $25 and $30, the monthly charge increased to $142.12 for the billing period ending on January 22, 1982, and was paid by the lessor. For the period ending February 19, 1982, however, the outstanding balance increased even more sharply to the sum of $1,475.30. Thomas Farrell, Jr., the managing partner of The French Eighth, thereupon contacted the Sewerage and Water Board (S & WB) to question the amount of the bill. He was told that the S & WB would verify the charges.
Farrell testified that he did not receive a response from the S & WB before the next bill arrived for the period ending March 22, 1982. At that time, the cumulative amount owed was $3,110.17, and he again contacted the S & WB. According to S & WB records, the first complaint received about the water bill was on March 16, 1982. A S & WB crew inspected the property on March 30,1982 and found that a leak in the plumbing “belonged to the owner”.
After learning from the S & WB that the bill had been verified, Farrell went to Watts’s office sometime before mid-April, 1982, and told him of the extraordinary charges. When Farrell asked if there were any broken pipes in the premises, he was informed that the toilet in the ladies room had been running for several months. Farrell inspected the fixture and immediately stopped the continuous flushing of water by turning a valve screw. Thereafter, on April 19, 1982, Farrell demanded in writing that Watts pay the outstanding balance. Although the next water bill for the period ending April 22, 1982 showed a cumulative amount due of $4,149.01, the new charges for the following period ending on May 21, 1982 returned to a more typical amount of $37.12.
Watts attempted to obtain a reduction in the outstanding bill by corresponding with the S & WB and scheduling an administrative hearing on September 16, 1982. Both Farrell and Watts attended this hearing, but Farrell left after Watts and his attorney refused to pay the bill. Under S & WB policy, although some relief can be given to a property owner if a water leak is hidden or involves a plumbing defect, no adjustment is made for a toilet or fixture leak such as occurred in this case. The S & WB declined to adjust the outstanding bill.
The French Eighth subsequently paid the total water bill and sued Watts for reim *555 bursement. Following a trial on the merits, judgment was rendered in favor of The French Eighth in the amount of $4,236.55. In written reasons for judgment, the trial judge concluded that Watts’s failure to maintain or repair the plumbing as provided by the lease was the reason for the excess water bill and that his breach of the lease agreement obligated him to reimburse the landlord for the excess amount paid. The judge further noted that the landlord’s obligation to pay the water bill according to the terms of the lease did not exculpate the tenant from liability.
Appealing, Watts argues that the fault for the excessive water bill lay solely with The French Eighth who, despite receiving the extraordinary bills, failed to inspect its property for leaks or warn Watts of the problem. Watts further points out that The French Eighth rejected another opportunity to mitigate its damages by leaving the S & WB hearing before evidence could be presented to have the bill reduced. According to Watts, only The French Eighth, as owner of the premises and holder of the water meter, could pursue this administrative remedy.
We reject Watts’s contention that the landlord was at fault or failed to mitigate its damages by neglecting to inspect the premises or notify Watts of the increasing water bills. Upon receiving the sharply increased bill in February, Farrell promptly contacted the S & WB and questioned the charges. Because of the prior history of modest monthly water bills, it was reasonable for him to assume initially that the extraordinary bill was a clerical error or that the problem was caused by the water meter rather than plumbing fixtures in the building. Because Watts was occupying the premises and had the responsibility for repairing and maintaining the fixtures, Farrell could reasonably rely on his tenant to discover and rectify an obvious problem with the plumbing. While the S & WB was investigating the lessor’s complaint, a subsequent bill arrived in a higher amount and Farrell again complained to the S & WB. Once assured that the meter reading had been verified, Farrell took the next logical step of inspecting the property and questioning the tenant himself. Upon discovering the obvious defect in the toilet, Farrell immediately stopped the flow of water.
Although Watts testified that the plumbing had been damaged by a freeze in January, 1982, and that he had notified a plumber who needed to order a special part, the lessee was not thereby excused from his responsibility for the increased water bills. Significantly, the leaking toilet was a blatant problem that Watts allowed to continue unchecked for months. As Far-réll testified, "... [I]t was running, you couldn’t miss it, it was running twenty-four hours a day steadily flushing all day and all night long and they [the lessee] knew about it.” Although the water could be heard running, Watts had not asked the plumber to turn off the water supply to the fixture. Under these circumstances, Watts had an obligation to fix the continuously flushing toilet even without being notified of the increased water bills. Accordingly, the trial judge properly cast the tenant in judgment for the extraordinary water bills paid by the lessor.
In so holding, we distinguish Hebert v. Neyrey, 445 So.2d 1165 (La.1984), relied on by Watts. In Hebert, the lease obligated the lessor to repair conditions caused by fire or “other casualty” so long as they were not caused by the lessee’s fault or negligence. The Supreme Court held that the lessor was responsible for repairing water pipes that had burst during a record breaking freeze since the damage had not been caused by the lessees’ fault or negligence, but rather by a weather casualty beyond their control. In the instant case, unlike Hebert, the tenant was responsible for the repair and maintenance of the plumbing even if caused by freeze. Watts knew or should have known that the toilet was continuously running day and night, and his failure to correct the problem resulted in excessive water bills for which he is responsible.
We further reject the tenant’s argument that the lessor failed to mitigate its damages through an administrative settlement with the S & WB. Although Watts *556 argues that the S & WB would have reduced the bill because the damage was caused by the freeze, his position is unsupported by the evidence. The S & WB hearing officer testified that the S & WB will give relief to a property owner if a plumbing leak is hidden, but not if it is a fixture leak. This witness testified that the S & WB determined not to adjust the bill in this case because the leak was caused by a toilet problem. In light of this testimony, it is apparent that Farrell’s abrupt departure from the administrative hearing had no effect on the S & WB’s refusal to reduce the bill. It is clear that the S & WB based its administrative decision on its own policy and the facts of the case rather than on the actions or inactions of The French Eighth.
Accordingly, the judgment is affirmed.
AFFIRMED.